FILED

2011 NOV -8 PM 2:52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　　　v.<br><br>HIPOLITO RUVALCABA,<br>　aka "Polo,"<br>LAWRENCE GALAZ JR.,<br>　aka "Larry Boy,"<br>　aka "LB,"<br>JENNY GREGORIO,<br>　aka "Jenny G," and<br>STEPHANY BALLARDO,<br><br>　　　　　　　　Defendants. | No. CR 11-  CR 11 01061<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute Cocaine Base in the Form of Crack Cocaine and Cocaine; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C): Possession with Intent to Distribute Cocaine Base in the Form of Crack Cocaine and Cocaine; 21 U.S.C. §§ 841(a)(1), (b)(1)(C): Distribution of Cocaine; 18 U.S.C. § 924(c)(1)(A)(i): Possession of a Firearm in Furtherance of a Drug Trafficking Crime] |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

A.　OBJECTS OF THE CONSPIRACY

　　Beginning on an unknown date, and continuing to on or about May 20, 2009, in Los Angeles County, within the Central District

of California, and elsewhere, defendants HIPOLITO RUVALCABA, also
known as ("aka") "Polo" ("RUVALCABA"), LAWRENCE GALAZ JR., aka
"Larry Boy," aka "LB" ("GALAZ"), JENNY GREGORIO, aka "Jenny G"
("GREGORIO"), and STEPHANY BALLARDO ("BALLARDO"), and others
known and unknown to the Grand Jury, conspired and agreed with
each other to knowingly and intentionally commit the following
offenses defined in Title 21, United States Code, Section
841(a)(1), namely:

1.    Distribution of at least 280 grams of a mixture or
substance containing a detectable amount of cocaine base in the
form of crack cocaine ("crack cocaine"), a schedule II narcotic
drug controlled substance, in violation of Title 21, United
States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii);

2.    Distribution of at least 28 grams of a mixture or
substance containing a detectable amount of crack cocaine, a
schedule II narcotic drug controlled substance, in violation of
Title 21, United States Code, Sections 841(a)(1) and
841(b)(1)(B)(iii);

3.    Distribution of at least 500 grams of a mixture or
substance containing a detectable amount of cocaine ("powder
cocaine"), a schedule II narcotic drug controlled substance, in
violation of Title 21, United States Code, Sections 841(a)(1) and
841(b)(1)(B)(ii);

4.    Distribution of a mixture or substance containing a
detectable amount of crack cocaine, a schedule II narcotic drug
controlled substance, in violation of Title 21, United States
Code, Sections 841(a)(1) and 841(b)(1)(C); and

5.   Distribution of a mixture or substance containing a detectable amount of powder cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1.   Defendant RUVALCABA would obtain cocaine from an unknown supplier.

2.   Defendant RUVALCABA would distribute cocaine to defendants GALAZ and GREGORIO, and other co-conspirators, for further distribution.

3.   Defendant GALAZ would "cook" powder cocaine into crack cocaine.

4.   Defendant GALAZ would distribute crack cocaine and powder cocaine to his customers and would instruct defendant BALLARDO to do so and to collect payment from those customers.

5.   Defendant GREGORIO would distribute cocaine to her customers.

6.   Defendant BALLARDO would assist defendant GALAZ by storing powder cocaine, by distributing powder and crack cocaine to defendant GALAZ's customers, and by collecting payment from those customers.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendants RUVALCABA, GALAZ, GREGORIO, and BALLARDO, and others

3

known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1.  Beginning no later than February 19, 2009, and continuing through March 30, 2009, defendant BALLARDO maintained a storage location, or "stash house," at 688 West 22nd Street in San Pedro, California, where defendant GALAZ stored powder cocaine and crack cocaine for later sale to his narcotics customers.

2.  On February 19, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 1.2 grams of powder cocaine to a female customer outside of a furniture store on 10th Street and Pacific Avenue in San Pedro, California, in exchange for $50.

3.  On February 19, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 1.2 grams of powder cocaine on behalf of defendant GALAZ to a female customer outside of a furniture store on 10th Street and Pacific Avenue in San Pedro, California, in exchange for $50.

4.  On February 19, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 1.4 grams of powder cocaine to a customer named "Trick" in the parking lot of a barber shop on 11th Street in San Pedro, California, in exchange for $50.

5.  On February 19, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 1.4 grams of powder cocaine on behalf of defendant

1   GALAZ to a customer named "Trick" in the parking lot of a barber

2   shop on 11th Street in San Pedro, California, in exchange for

3   $50.

4       6.  On February 19, 2009, using coded language in a

5   telephone conversation, defendant GALAZ instructed defendant

6   BALLARDO to deliver approximately 1.1 grams of powder cocaine to

7   a male customer at his residence near the corner of Cabrillo

8   Avenue and 17th Street in San Pedro, California, in exchange for

9   $50.

10      7.  On February 19, 2009, using coded language in a

11  telephone conversation, defendant BALLARDO agreed to deliver

12  approximately 1.1 grams of powder cocaine on behalf of defendant

13  GALAZ to a male customer at the customer's residence near the

14  corner of Cabrillo Avenue and 17th Street in San Pedro,

15  California, in exchange for $50.

16      8.  On February 24, 2009, using coded language in a

17  telephone conversation, defendant GALAZ agreed to deliver powder

18  cocaine to a customer named "Winkie" at a residence on 19th

19  Street in San Pedro, California.

20      9.  On February 24, 2009, defendant GALAZ went to the

21  storage location, or "stash house," maintained by defendant

22  BALLARDO on 22nd Street in San Pedro, California, to obtain

23  powder cocaine for delivery to defendant GALAZ's customers.

24      10. On February 24, 2009, defendant GALAZ distributed

25  powder cocaine to a customer named "Winkie" at a residence on S.

26  Grand Avenue in San Pedro, California.

27      11. On February 24, 2009, using coded language in a

28  telephone conversation, defendant GALAZ agreed to deliver powder

cocaine to a customer named "Winkie" at a residence on 13th Street in San Pedro, California.

12. On February 24, 2009, defendant GALAZ distributed powder cocaine to a customer named "Winkie" at a residence on 13th Street in San Pedro, California.

13. On February 24, 2009, using coded language in a telephone conversation, defendant GALAZ agreed to deliver cocaine to a customer named "Trick" in an alley behind a liquor store on Pacific Avenue in San Pedro, California.

14. On February 24, 2009, defendant GALAZ distributed cocaine to a customer named "Trick" in an alley behind a liquor store on Pacific Avenue in San Pedro, California.

15. On February 24, 2009, using coded language in a telephone conversation, defendant GALAZ agreed to deliver approximately $40 worth, or approximately one gram, of cocaine to a female customer at the corner of 1st Street and Palos Verdes Street in San Pedro, California.

16. On February 24, 2009, defendant GALAZ distributed approximately $40 worth, or approximately one gram, of cocaine to a female customer at the corner of 1st Street and Palos Verdes Street in San Pedro, California.

17. On February 27, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to measure out and deliver approximately 6.5 grams of powder cocaine to a male customer near the customer's residence on 3rd Street in San Pedro, California.

18. On February 27, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to measure out

and deliver approximately 6.5 grams of powder cocaine on behalf of defendant GALAZ to a male customer near the customer's residence on 3rd Street in San Pedro, California.

19.  On February 27, 2009, defendant BALLARDO distributed approximately 6.5 grams of powder cocaine on behalf of defendant GALAZ to a male customer near the customer's residence on 3rd Street in San Pedro, California, in exchange for $200.

20.  On February 27, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 2.3 grams of powder cocaine, in two separate packages, to a location at 15th Street and Cabrillo Avenue in San Pedro, California.

21.  On February 27, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 2.3 grams of powder cocaine, in two separate packages, to a location at 15th Street and Cabrillo Avenue in San Pedro, California.

22.  On February 27, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 1.1 grams of powder cocaine to a residence on 19th Street in San Pedro, California.

23.  On February 27, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 1.1 grams of powder cocaine on behalf of defendant GALAZ to a residence on 19th Street in San Pedro, California.

24.  On February 27, 2009, using coded language in a telephone conversation, defendant GALAZ asked defendant BALLARDO to deliver approximately 1.3 grams of powder cocaine to a

customer named "Trick" near the corner of 9th Street and Cabrillo Avenue in San Pedro, California.

25.  On March 3, 2009, using coded language in a telephone conversation, defendant RUVALCABA told defendant GALAZ that the price for one kilogram of powder cocaine had changed and was now $23,400 per kilogram.

26.  On March 3, 2009, using coded language in a telephone conversation, defendant GALAZ told defendant RUVALCABA that he would be ready to purchase additional kilograms of powder cocaine after defendant GALAZ finished selling the quantities he already had.

27.  On March 7, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 13 grams of powder cocaine to a customer named "Cesar" outside the customer's residence on 15th Street in San Pedro, California.

28.  On March 7, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 13 grams of powder cocaine on behalf of defendant GALAZ to a customer named "Cesar" outside the customer's residence on 15th Street in San Pedro, California.

29.  On March 7, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 1.3 grams of powder cocaine to a customer named "Turtle" at the corner of 19th Street and Cabrillo Avenue in San Pedro, California.

30.  On March 7, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately

1.3 grams of powder cocaine on behalf of defendant GALAZ to a customer named "Turtle" at the corner of 19th Street and Cabrillo Avenue in San Pedro, California.

31.  On March 7, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 1.1 grams of powder cocaine to a customer named "Trick" at the corner of 19th Street and Cabrillo Avenue in San Pedro, California.

32.  On March 7, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 1.1 grams of powder cocaine on behalf of defendant GALAZ to a customer named "Trick" at the corner of 19th Street and Cabrillo Avenue in San Pedro, California.

33.  On March 8, 2009, using coded language in a telephone conversation, defendant BALLARDO told defendant GALAZ that she left him some money that she had collected from defendant GALAZ's narcotics customers on behalf of defendant GALAZ.

34.  On March 9, 2009, defendant GALAZ possessed with intent to distribute approximately 15 grams of powder cocaine.

35.  On March 9, 2009, using coded language in a telephone conversation, defendant BALLARDO told defendant GALAZ that a customer named "Carrie" wanted to purchase $400 worth, or approximately 14 grams, of powder cocaine, and $60 worth, or approximately one gram, of powder cocaine, in separate packages, from defendant GALAZ.

36.  On March 9, 2009, using coded language in a telephone conversation, defendant GALAZ agreed to distribute $400 worth, or approximately 14 grams, of powder cocaine, and $60 worth, or

approximately one gram, of powder cocaine, in separate packages, to defendant BALLARDO for subsequent distribution to a customer named "Carrie."

37. On March 11, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 2.8 grams of powder cocaine to a male customer at the corner of 19th Street and Cabrillo Avenue in San Pedro, California.

38. On March 11, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 2.8 grams of powder cocaine on behalf of defendant GALAZ to a male customer at the corner of 19th Street and Cabrillo Avenue in San Pedro, California.

39. On March 11, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 1.5 grams of powder cocaine to a male customer at an apartment near 12th Street and Palos Verdes Boulevard in San Pedro, California.

40. On March 11, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 1.5 grams of powder cocaine on behalf of defendant GALAZ to a male customer at an apartment near 12th Street and Palos Verdes Boulevard in San Pedro, California.

41. On March 11, 2009, defendant BALLARDO distributed approximately 1.5 grams of powder cocaine on behalf of defendant GALAZ to a male customer at an apartment near 12th Street and Palos Verdes Boulevard in San Pedro, California.

42.   On March 11, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 1.3 grams of powder cocaine to a customer named "Turtle" in the parking lot of the Toberman Neighborhood Center in San Pedro, California, in exchange for $50.

43.   On March 11, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 1.3 grams of powder cocaine on behalf of defendant GALAZ to a customer named "Turtle" in the parking lot of the Toberman Neighborhood Center in San Pedro, California, in exchange for $50.

44.   On March 11, 2009, defendant BALLARDO distributed approximately 1.5 grams of powder cocaine on behalf of defendant GALAZ to a customer named "Turtle" in the parking lot of the Toberman Neighborhood Center in San Pedro, California, in exchange for $50.

45.   On March 11, 2009, using coded language in a telephone conversation, defendant GALAZ instructed defendant BALLARDO to deliver approximately 3.5 grams of powder cocaine and 0.5 grams of crack cocaine to two customers on Cabrillo Avenue in San Pedro, California, in exchange for $120.

46.   On March 11, 2009, defendant BALLARDO distributed approximately 3.5 grams of powder cocaine on behalf of defendant GALAZ to a customer in exchange for $100.

47.   On March 11, 2009, using coded language in a telephone conversation, defendant BALLARDO agreed to deliver approximately 0.5 grams of crack cocaine on behalf of defendant GALAZ to a customer named "Chet" on 15th Street in San Pedro, California, in

1  exchange for $20.

2       48.  On March 11, 2009, using coded language in a telephone

3  conversation, defendant GALAZ instructed defendant BALLARDO to

4  deliver approximately 14.2 grams of powder cocaine to a residence

5  in San Pedro, California.

6       49.  On March 11, 2009, using coded language in a telephone

7  conversation, defendant BALLARDO agreed to deliver approximately

8  14.2 grams of powder cocaine, on behalf of defendant GALAZ, to a

9  residence in San Pedro, California.

10      50.  On March 13, 2009, using coded language in a telephone

11 conversation, defendant GALAZ told a customer named "Spook" that

12 the price for one-eighth of an ounce, or approximately three

13 grams, of powder cocaine was $100, and defendant GALAZ offered to

14 sell the customer approximately 2.5 grams of powder cocaine for

15 $90.

16      51.  On March 13, 2009, using coded language in a telephone

17 conversation, defendant GALAZ instructed defendant BALLARDO to

18 deliver approximately 1.4 grams of powder cocaine to a customer

19 named "Trick" at the corner of 19th Street and Cabrillo Avenue in

20 San Pedro, California.

21      52.  On March 13, 2009, using coded language in a telephone

22 conversation, defendant BALLARDO agreed to deliver approximately

23 1.4 grams of powder cocaine on behalf of defendant GALAZ to a

24 customer named "Trick" at the corner of 19th Street and Cabrillo

25 Avenue in San Pedro, California.

26      53.  On March 18, 2009, using coded language in a telephone

27 conversation, defendant BALLARDO ordered $100 worth, or

28 approximately three grams, of powder cocaine from defendant GALAZ

1   on behalf of a female customer.

2        54.   On March 18, 2009, using coded language in a telephone

3   conversation, defendant GALAZ agreed to deliver $100 worth, or

4   approximately three grams, of powder cocaine to defendant

5   BALLARDO for later re-sale to the female customer.

6        55.   On March 18, 2009, defendant GALAZ distributed

7   approximately three grams of powder cocaine to defendant BALLARDO

8   for later re-sale to the female customer.

9        56.   On March 18, 2009, defendant BALLARDO possessed with

10  intent to distribute approximately three grams of powder cocaine.

11       57.   On March 20, 2009, using coded language in a telephone

12  conversation, defendant GALAZ instructed defendant BALLARDO to

13  deliver approximately 1.4 grams of crack cocaine to a male

14  customer between 12th Street and 13th Street in San Pedro,

15  California.

16       58.   On March 20, 2009, using coded language in a telephone

17  conversation, defendant BALLARDO agreed to deliver approximately

18  1.4 grams of crack cocaine on behalf of defendant GALAZ to a male

19  customer between 12th Street and 13th Street in San Pedro,

20  California.

21       59.   On March 21, 2009, using coded language in a telephone

22  conversation, defendants RUVALCABA and GALAZ arranged to meet so

23  that defendant GALAZ could pay defendant RUVALCABA money owed by

24  defendant GALAZ for narcotics purchases.

25       60.   On March 21, 2009, defendant GALAZ paid defendant

26  RUVALCABA approximately $26,000 for prior amounts of powder

27  cocaine provided by defendant RUVALCABA.

28       61.   On March 21, 2009, using coded language in a telephone

conversation, defendant RUVALCABA complained to an unknown narcotics supplier that a shipment of powder cocaine was poor quality.

62. On March 23, 2009, using coded language in a telephone conversation, defendants RUVALCABA and GALAZ discussed defendant RUVALCABA's interaction with police officers after their March 21, 2009 meeting and discussed how they could avoid law enforcement interference in future meetings.

63. On March 24, 2009, using coded language in a telephone conversation, defendant GALAZ arranged to meet with defendant RUVALCABA to discuss the price that defendant RUVALCABA would charge one of defendant GALAZ's customers for a transaction involving multiple kilograms of powder cocaine.

64. On March 24, 2009, during an in-person conversation, defendant RUVALCABA told defendant GALAZ that he could sell powder cocaine to defendant GALAZ's customer for $23,500 per kilogram.

65. On March 24, 2009, using coded language in a telephone conversation, defendant GALAZ told a customer named "Cheerio" that the price would be $23,500 per kilogram of powder cocaine.

66. On March 24, 2009, defendant GALAZ went to a storage location, or "stash house," on 19th Street in San Pedro, California, to obtain powder cocaine for delivery to defendant GALAZ's customers.

67. On March 25, 2009, using coded language in a telephone conversation, defendant RUVALCABA and an unknown narcotics supplier discussed the amount of money paid by defendant RUVALCABA for prior purchases of powder cocaine and the amount

1   still owed by defendant RUVALCABA for those prior purchases.

2         68.   On March 26, 2009, using coded language in a telephone

3   conversation, defendant RUVALCABA told defendant GALAZ that he

4   could sell powder cocaine to defendant GALAZ's customer at a

5   price of $23,200 per kilogram.

6         69.   On March 26, 2009, using coded language in a telephone

7   conversation, defendant GALAZ told a customer named "Cheerio"

8   that the price would be $23,000 per kilogram of powder cocaine.

9         70.   On March 29, 2009, using coded language in a telephone

10  conversation, defendant BALLARDO ordered $100 worth, or

11  approximately three grams, of powder cocaine from defendant GALAZ

12  on behalf of a female customer.

13        71.   On March 29, 2009, using coded language in a telephone

14  conversation, defendant GALAZ agreed to deliver $100 worth, or

15  approximately three grams, of powder cocaine to defendant

16  BALLARDO for later re-sale to the female customer.

17        72.   On March 30, 2009, defendant GALAZ used defendant

18  BALLARDO's storage location, or "stash house," to convert, or

19  "cook," powder cocaine into crack cocaine.

20        73.   On March 30, 2009, defendants GALAZ and BALLARDO

21  possessed with intent to distribute approximately 427.4 grams of

22  crack cocaine and approximately 540.4 grams of powder cocaine.

23        74.   On March 30, 2009, defendant GALAZ possessed a loaded

24  Taurus .357 Magnum revolver in furtherance of his crack and

25  powder cocaine trafficking.

26        75.   On March 30, 2009, using coded language in a telephone

27  conversation, defendant GREGORIO told defendant RUVALCABA that

28  her narcotics customers were asking if they would lower the price

1  of one-half kilogram, or approximately 500 grams, of powder

2  cocaine to $11,500 per one-half kilogram.

3       76.  On March 30, 2009, using coded language in a telephone

4  conversation, defendant RUVALCABA told defendant GREGORIO that he

5  would sell one-half kilogram, or approximately 500 grams, of

6  powder cocaine for $11,600.

7       77.  On March 30, 2009, using coded language in a telephone

8  conversation, defendant GREGORIO told defendant RUVALCABA that

9  she would pass along defendant RUVALCABA's price quote to her

10 customer.

11      78.  On March 31, 2009, using coded language in a telephone

12 conversation, defendants RUVALCABA and GALAZ discussed defendant

13 GALAZ's arrest the previous day, and defendant GALAZ told

14 defendant RUVALCABA that the police had searched the location

15 where defendant GALAZ stored and cooked his powder cocaine.

16      79.  On March 31, 2009, using coded language in a telephone

17 conversation, defendants RUVALCABA and GALAZ agreed to meet the

18 next day to discuss their narcotics trafficking following

19 defendant GALAZ's arrest the previous day.

20      80.  On April 1, 2009, defendant GALAZ met with defendant

21 RUVALCABA and provided payment for narcotics purchases from

22 defendant RUVALCABA.

23      81.  On April 3, 2009, using coded language in a telephone

24 conversation, defendant GREGORIO asked defendant RUVALCABA if he

25 still had one-half kilogram, or approximately 500 grams, of

26 powder cocaine available for sale because her customers were

27 ready to purchase it.

28

82.  On April 3, 2009, using coded language in a telephone conversation, defendant RUVALCABA told defendant GREGORIO that he would check to see if his suppliers had one-half kilogram, or approximately 500 grams, of powder cocaine available for sale and would call defendant GREGORIO back.

83.  On April 8, 2009, defendants RUVALCABA and GREGORIO agreed to meet for defendant GREGORIO to purchase powder cocaine from defendant RUVALCABA.

84.  On April 8, 2009, using coded language in a telephone conversation, defendant RUVALCABA asked an unindicted co-conspirator if he had the powder cocaine ready for distribution to defendant GREGORIO.

85.  On April 8, 2009, defendant RUVALCABA distributed approximately 499.3 grams of powder cocaine to defendant GREGORIO at his residence on Marine Avenue in Wilmington, California.

86.  On April 8, 2009, defendant GREGORIO possessed with intent to distribute approximately 499.3 grams of powder cocaine.

87.  On April 9, 2009, using coded language in a telephone conversation, defendant GREGORIO warned defendant RUVALCABA that he should discontinue using his telephone because police officers had recovered telephone numbers from her telephone during her arrest and because police officers had been watching her prior to her arrest.

88.  On April 27, 2009, defendant GALAZ told a confidential informant working on behalf of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("CI") that the price he was charging for one ounce of powder cocaine was still $750.

89.   On May 20, 2009, defendant GALAZ told the CI that he would sell approximately one ounce, or approximately 28 grams, of powder cocaine to the CI for $725.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii)]

On or about March 30, 2009, in Los Angeles County, within the Central District of California, defendants LAWRENCE GALAZ JR., also known as ("aka") "Larry Boy," aka "LB," and STEPHANY BALLARDO knowingly and intentionally possessed with intent to distribute at least 280 grams, that is, approximately 427.4 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)]

On or about March 30, 2009, in Los Angeles County, within the Central District of California, defendants LAWRENCE GALAZ JR., also known as ("aka") "Larry Boy," aka "LB," and STEPHANY BALLARDO knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 540.4 grams, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

COUNT FOUR

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about March 30, 2009, in Los Angeles County, within the Central District of California, defendant LAWRENCE GALAZ JR., also known as ("aka") "Larry Boy," aka "LB," knowingly possessed a firearm, namely, a loaded Taurus .357 Magnum revolver, bearing serial number UK49859, in furtherance of a drug trafficking crime, namely, possession with intent to distribute cocaine base in the form of crack cocaine and cocaine, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Counts Two and Three of this Indictment.

21

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about April 8, 2009, in Los Angeles County, within the Central District of California, defendant HIPOLITO RUVALCABA, also known as "Polo," knowingly and intentionally distributed approximately 499.3 grams of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about April 8, 2009, in Los Angeles County, within the Central District of California, defendant JENNY GREGORIO, also known as "Jenny G," knowingly and intentionally possessed with intent to distribute approximately 499.3 grams of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

A TRUE BILL

/s/

Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

ELIZABETH R. YANG
Assistant United States Attorney
Chief, Violent & Organized Crime Section

KEVIN M. LALLY
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section

SCOTT M. GARRINGER
SHAWN J. NELSON
Assistant United States Attorneys
Violent & Organized Crime Section

23